Ernest L. Signorelli, J.
Defendants make this application for an order certifying that it is reasonable that the charges pending against them in the Court of Special Sessions of the Town of Southamption be prosecuted by indictment, pursuant to section 57 of the 'Code of Criminal Procedure.
Each defendant is charged with the following:
Vincent Prisco is charged with five separate informations of promoting gambling in the second degree (Penal Law, § 225.05) , each occurring on .separate dates, as well as a sixth charge — a felony — promoting gambling in the first degree (Penal Law, § 225.10, subd. 2, par. [a]).
Richard D. Creighton is charged with 11 violations of promoting gambling in the second degree (Penal Law, § 225.05), as well as a charge of possessing gambling records in the second degree (Penal Law, § 225.05).
Robert Tricoma is charged with six violations of promoting gambling in the second degree (Penal Law, § 225.05).
William Walker is charged with two violations of promoting gambling in the second degree (Penal Law, § 225.05).
Carlos Williams is charged with five separate violations of promoting gambling in the .second degree (Penal Law, § 225.05) .
Defendants contend in support of their application that there are complex and intricate questions of fact and law, and adverse publicity has made it impossible for them to receive a fair trial in the lower court.
The leading case setting forth some of the tests to utilize in arriving at “ reasonable ” as set forth in section 57 of the Code of Criminal Procedure is People v. Rosenberg (59 Misc. 342). “ Reasonable ” has been defined to mean “ just, proper, fair, equitable ”, and, although each case must be decided in light of its own special facts, the generally accepted criteria are as follows:
*495 (1) That the case presents intricate and complicated questions of fact, rendering a jury trial proper.
(2) That it presents difficult questions of law.
(3) That a property right is involved.
(4) That a decision may be far-reaching in its effect, and will become a precedent which will regulate a matter of general interest.
(5) The case is of exceptional character and that the defendants, for some special reason, cannot have a fair trial in the lower court.
The burden of proof is upon the moving party to show that it is “ reasonable ’ ’ that the charge against the defendant so moving should be prosecuted by indictment. (People v. Rosenberg, 59 Misc. 342, supra; People v. Currao, 166 Misc. 374.)
The defendants appear to base this application upon number (1), (2) and (5) of the above set-forth criteria of “ reasonableness ”. Since the defendants are entitled to a jury trial in the lower court, the first criterion is academic. Since the Rosenberg decision, the stature of the lower courts has been vastly improved, so that no decision can be found in which the lower courts were not held sufficiently qualified to handle the legal questions involved herein. (Matter of Knight, 178 Misc. 972; People v. Zinke, 170 Misc. 332; People v. Lane, 149 N. Y. S. 2d 769.)
The only criteria left therefore are those with respect to special circumstances. The defendants allege that the notoriety from newspaper publications would deprive them of a fair trial in the local community in which these charges have been brought and that this, therefore, is a special circumstance which should afford them the relief requested.
The defendants attach, as a part of their moving papers, several newspaper articles from Newsday, News-Review, and the Sunday Review.
The first of these articles, from the Sunday Review dated August 2, 1970 under a page one headline, “ 14 Gamblers Arrested on ELI ’ ’, states: ‘ ‘ The haul on the south fork resulted in ‘ larger fish ’, among them Vincent Rocco Prisco, 46, of 5 Jordan Court, Commack, whose criminal record in the numbers operation dates back 23 years. Prisco, awaiting trial on a 60 count indictment stemming from his arrest on gambling charges in February, 1969 ”; “ Prisco, long described by police as the ‘ top man ’ in the eastern Suffolk numbers racket, banked this operation, with at least half a million dollars a year, authorities charged ”; “ Richard 'Creighton, *496 who is also awaiting trial on gambling charges, stemming from the February, 1969 raid”; “Two others awaiting trial on gambling charges, stemming from the February, 1969 raid were also picked up Thursday; they are Robert Tricoma and William ‘ Mann ’ Walker.” Carlos Williams was only referred to as being “ arrested ”.
The second article, from Newsday dated July 31, 1970 under a headline “Betting Raids Hit East End ” states: “ One of the men arrested was Vincent R. Prisco, 43, who investigators charged, runs a Southamption policy operation. Prisco, who still is awaiting trial on prior gambling arrests, was described as a member of the Joseph Colombo crime family. He has three prior policy convictions and two for gambling ’ ’. Richard D. Creighton, Robert J. Tricoma, William Mann Walker, and Alcollis Williams are referred to as having been ‘‘ arrested ’ ’.
The third article, from the Sunday Review dated August 30, 1970, shows pictures, under the caption “ Million Dollar Policy Ring Arrests ”, of William Creighton and Vincent Rocco Prisco. The article states: ‘ ‘ Prisco, described as a long-time policy operator with a record dating back 23 years, is said to have been the banker of the operation which has been under investigation for several months ”; “ the elder Creighton brother, the alleged controller ”.
The fourth article, from Newsday dated August 31, 1970, states: “Arrested were Vincent R. Prisco, 45, of 6 Jordan Court, Huntington, described by police as a Colombo crime family associate ”, “ and Richard Creighton, 27, of 155 Flanders Road, Riverhead ”; “ Prisco is also free in $10,000 bail on charges stemming from last month’s arrest, and Creighton is free in $7,000 bail, pending trial on the earlier gambling charges ”.
The final article, which is an editorial from the News-Review dated September 3, 1970, states: “Is there so little fear of the law that they can go right back into operation while awaiting trial? Are the penalties of iso little consequence that they are willing to risk their future freedoms and continue to rake it in. The identities of the 80 runners associated with operation of the policy ring have aroused some interest. Are they housewives, reputable members of the community or just plain Joes out to make an easy buck? Perhaps it’s time for them to share some of the penalties ”.
There is a considerable body of decisions which enunciate the principle that newspaper comments, even though extensive, do not establish an “inability to get a fair trial”. (People v. Stern, 236 N. Y. S. 2d 703; People v. Sandgren, 1901 Misc. *497 810.) Recent decisions by the United States Supreme Court indicate that the courts should take a greater cognizance of the effect of publicity upon a criminal trial, since the aforementioned decisions in our State courts. In Irvin v. Dowd (366 U. S. 717), cited by the prosecution, the court stated on page 723: “ It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. * * * The adoption of such a rule, however, 1 cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner’s life or liberty without due process of law.’ * * * the test is ‘ whether the nature and strength of the opinion formed are such as in law necessarily * * * raised the presumption of partiality. The question thus presented is one of mixed law and fact ’ * * * the 1 so-called mixed questions or the application of constitutional principles to the facts, as found leave the duty of adjudication with the federal judge ’ ”,
In the concurring opinion by Justice Frankfurter. at page 730, the court stated: “ Not a Term passes without this Court being importuned to review convictions, had in States throughout the country, in which substantial claims are made that a jury trial has been distorted because of inflammatory newspaper accounts * * # For one reason or another this Court does not undertake to review all such envenomed state prosecutions. But, again and again, such disregard of fundamental fairness is so flagrant that the Court is compelled, as it was only a week ago, to reverse a conviction in which prejudicial newspaper intrusion has poisoned the outcome
In Sheppard v. Maxwell (384 U. S. 333) the court stated (pp. 350-351): ‘ ‘1 Freedom of discussion should be given the widest range compatible with the essential requirement of the fair and orderly administration of justice. ’ * * * But it must not be allowed to divert the trial from the ‘ very purpose of a court system * * # to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures. ’ * * * Among these ‘ legal procedures ’ is the requirement that the jury’s verdict be based on evidence received in open court, not from outside sources. Thus, in Marshall v. United States, 360 U. S. 310 (1959), we set aside a federal conviction where the jurors were exposed ‘ through news accounts ’ to information that was not admitted at trial. We held that the prejudice from such material ‘ may indeed be greater ’ than when it is part of the prosecution’s evidence ‘ for it is then not tempered by *498 protective procedures.’ * * * At the same time, we did not consider dispositive the statement of each juror ‘ that he would not he influenced by the news articles, that he could decide the case only on the evidence of record, and that he felt no prejudice against petitioner as a result of the articles.’ ”
The court further stated (p. 352): “ Only last Term in Estes v. Texas, 381 U. S. 532 (1965), we set aside a conviction despite the absence of any showing of prejudice. We said there: ‘ It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involved such a probability that prejudice will result that it is deemed inherently lacking in due process.’ * * * And we cited with approval the language of Mr. Justice Black for the Court in In re Murchison, 349 U. S. 133, 136 (1955), that ‘ our system of law has always endeavored to prevent even the probability of unfairness.’”
The court summed up by stating (pp. 362-363): “ From the cases coming here we note that unfair and prejudicial news comment on pending trials has become increasingly prevalent. Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates or transfer it to another county not so permeated with publicity. * * * But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception.”
There has been an increasing awareness on the part of the news media, the Bench, and the Bar, since the Sheppard, decision (supra) concerning the effect of publicity on a defendant’s right to a fair trial; e.g., the American Bar Association’s “ Standards Relating to Fair Trial and Free Press ” and the New York Fair Trial — Free Press 'Conference’s “Fair Trial Principles and Guidelines for the State of New York”. Both *499 of these publications set standards which have been violated by the publicity in the present case.
These defendants are mentioned several times in the newspaper articles and editorials .submitted, and the general inflammatory nature of the publicity could be prejudicial to a fair trial. Since the community involved is relatively small and the newspaper accounts in the two major publications in this area are vast and well read, it would be in the best interests of justice for this matter to be removed to a more extensive jurisdiction. The mere probability of prejudice, without any prejudice to the prosecution, should dictate the course of action to be followed by the court.
The District Attorney is directed to .submit a certificate in accordance with the provisions of section 57 of the Code of Criminal Procedure, and bail which has been fixed and posted in the Justice Court shall be continued.